# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 12-60028-MIDDLEBROOKS/BRANNON

ROBERT E. BEAVER, JR., *et al.*,
     Plaintiffs,

v.

INKMART, LLC., *et al.*,
     Defendants.

_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

THIS CAUSE comes before the Court upon Defendant Inkmart, LLC's ("Inkmart") Motion to Dismiss Plaintiffs' Amended Complaint ("Motion") (DE 52), filed July 10, 2012. Plaintiffs Robert E. Beaver's ("Beaver") and Inkmart of New England, LLC's ("New England") filed their Response (DE 72) on August 1, 2012, and Inkmart filed its Reply (DE 85) on August 13, 2012. I have considered the instant Motion, the Response, and the Reply, and am otherwise fully advised in the premises.

## I.    BACKGROUND

On July 6, 2010, Beaver contacted Franchise Group, LLC ("Franchise Group"), an independent franchise consulting firm located in Weston, Florida, seeking information about franchising and the right to sell franchises as an area developer within a franchise system. (*See* DE 52 at ¶ 9). Beaver purportedly spoke with Drew Paras ("Paras"), the Chief Executive Officer, President, and Managing Member of Franchise Group, who told Beaver to get in touch with Michael McConnell ("McConnell"), an authorized sales person employed by co-Defendant Master Franchise Investments, Inc. ("MFI"). (*See* DE 52 at ¶¶ 10, 11, 13). McConnell allegedly suggested to Beaver a master franchise and area developer

program[1] with Inkmart, a company that "promotes the sale, installation and maintenance of office printers, copiers, supplies, ink and toner and imaging products using INKMART's system." (*See* DE 52 at ¶¶ 11, 12).  Beaver spoke further with Paras, who was also the Chief Executive Officer, President, and Managing Member for Inkmart, on July 6, 2010.   (*See* DE 52 at ¶¶ 13, 14).  On July 7, 2010, Beaver spoke with Inkmart's Chief Technology and Franchise Support Officer, Joe Sullivan, regarding several programs offered as part of the "Inkmart system." (*See* DE 52 at ¶ 15).  Beaver alleges that Sullivan specifically mentioned the existence of the Inkmart "recycling" and "school fund-raising" programs, both designed to promote retail product sales for Inkmart franchisees. (*See id.*).  Per Beaver's request, Paras sent Beaver Inkmart's Franchise Disclosure Document on July 8, 2010. (*See* DE 52 at ¶ 16).[2]

Between July 6, 2010 and July 9, 2010, Beaver claims to have had numerous conversations with Paras and McConnell about master franchising and aquiring the right to sell franchises as an area developer within the Inkmart franchise system. (*See* DE 52 at ¶ 18).  Throughout these conversations, Paras allegedly told Beaver he would "have the ability to sell franchises." (*See* DE 52 at ¶ 19).

Beaver, Paras, and Tom Dunlap, Chief Operations and Business Development Officer for Inkmart, had further discussions regarding the franchise.  Beaver alleges that Paras and Dunlap told him of an Inkmart "Snap Order" system, "an end-user operated internet order entry system." (*See* DE 52 at ¶ 22).  He also alleges he was told that the sale or lease of printers, copiers, and facsimile machines could be counted on to generate follow-up Inkmart ink and toner sales. (*See id.*).  Further, Beaver claims he was promised a "trained and experienced sales force" that would be "immediately available" for his use. (*See id.*).

---

[1]While the Complaint does not thoroughly explain what a "master franchise" or "area developer program" is, it appears as though Beaver is alleging that he was promised the ability to sell Inkmart franchises and develop the Inkmart brand in the Northeastern region.

[2]For purposes of a 12(b)(6) motion, my consideration is limited to the four corners of the complaint.  This encompasses the complaint, itself, and any documents referenced therein or attached thereto that are central to the Plaintiffs' claims. *See Wilchombie v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009).

On August 11, 2010, Beaver and Inkmart signed the Inkmart Franchise Agreement ("Franchise Agreement"). (*See* DE 52 at ¶ 25). As part of the agreement, Beaver paid the $200,000 required to commence the agreement. (*See* DE 52 at ¶ 26). Beaver then began operating his Inkmart "master franchise" through Inkmart of New England, LLC ("New England"), the entity formed for the sole purpose of operating the Inkmart franchise. (*See* DE 52 at ¶ 28). During the operation of New England, Beaver alleges the insufficiency of the Inkmart system to support his efforts. Namely, Beaver alleges: (1) Beaver asked Inkmart to "supply him with all of the documents and materials necessary for him to solicit prospective franchisees within his territory," to which Inkmart responded with a document disclaiming the creation of any franchise relationship; (2) The "Preferred Vendor" and various advertising and marketing programs did not exist or were otherwise unavailable to Beaver or New England; (3) "Inkmart did not have available for sale, with any degree of reliability, numerous items and services listed in the portfolio of products" represented as part of the "Inkmart System"; (4) the items that were available for Beaver and New England were too expensive for the franchise to compete in the marketplace; and finally (5) the service technician network that Beaver was allegedly promised did not exist. (*See* DE 52 at 7-8). Plaintiffs also allege that the Franchise Disclosure Document ("FDD") failed to disclose several aspects of the agreements, as well as Paras' previous official position in a failed company, as required in the FDD. (*See* DE 52 at 11-13).[3]

On January 6, 2012, Plaintiffs filed their Complaint against Inkmart and several other Defendants. (*See* DE 1). Following a Motion to Dismiss by Inkmart (DE 22), I dismissed the Plaintiffs' Complaint for failing to adequately state a claim. (*See* DE 46). On June 25, 2012, Plaintiffs re-filed a five-count Amended Complaint ("Amended Complaint") against Inkmart and MFI. (*See* DE 52). The

---

[3]Specifically, Plaintiffs allege that Inkmart omitted the following from the FDD: (1) Paras' past position as a principal officer or director of TechHero, LLC, a failed franchisor; (2) MFI as a Franchise Seller or Broker; (3) the territory option rights for the state of Florida; and (4) the details of the master franchise and area developer rights Beaver claims to have been granted under the Franchise Agreement.

Amended Complaint alleges (1) Defendants' violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count I), Fla. Stat. §§ 501.201, *et seq.*, (*see* DE 52 at 9-13); (2) Inkmart's fraudulent misrepresentation (Count II), (*see* DE 52 at 13-15); (3) Defendants' negligent misrepresentation (Count III), (*see* DE 52 at 15-17); (4) recission (Count IV), (*see* DE 52 at 17-18); and (5) Inkmart's violation of the Florida Franchise Act ("FFA") (Count V), Fla. Stat. §§ 817.416, *et seq.* (*See* DE 52 at 18).

Inkmart moves to dismiss Plaintiffs' Amended Complaint and argues that (1) Plaintiffs failed to plead their fraud claims with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure, (2) the fraud-based claims are negated or precluded by the terms in the Franchise Agreement, (3) all or some of the claims are barred by the economic loss rule, (4) the misrepresentation claims are based on "vague statements of opinion, puffing or predictions that are not actionable," (5) there was no duty to disclose the matters that Defendants allegedly concealed, and (6) Plaintiffs' claims are barred by the Franchise Agreement, as they were untimely brought. (*See* DE 54 at 2-3).

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* FED. R. CIV. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, this Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) [hereinafter *Twombly*]; *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) [hereinafter *Iqbal*]. That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett*

*Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe plaintiff's complaint in the light most favorable to the plaintiff and take the factual allegations stated therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for the purpose of determining whether a claim is legally sufficient).

Generally, a plaintiff is not required to detail all the facts upon which he bases his claim. FED. R. CIV. P. 8(a)(2). Rather, Rule 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. *Twombly*, 550 U.S. at 555-56. However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3. The plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Id.*

## III. DISCUSSION

### B. Plaintiffs' Florida Deceptive and Unfair Trade Practices Act Claim

Count I of Plaintiffs' Amended Complaint alleges that Defendants violated FDUPTA by failing to provide Beaver with a substantially compliant FDD and all the additional required disclosures within the time period required by the Federal Trade Commission, as applied through FDUPTA. (*See* DE 52 at ¶ 50).

Specifically, Plaintiffs allege that Defendants violated FDUPTA by failing to include in the FDD Paras' position as a principal officer or director of TechHero, a "failed" and "defunct" franchisor, and by omitting MFI as a "Franchise Seller" as required in the FDD. (*See id.* at ¶¶ 51-52, 56-57). Additionally, Plaintiffs allege that FDUPTA was violated because Inkmart failed to properly disclose in the FDD the details of the master franchise and area development rights[4] being granted under the Franchise Agreement. (*See id.* at ¶ 60).

A cause of action arising under FDUPTA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 n.25 (11th Cir. 2012) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). In the Amended Complaint, Plaintiffs sufficiently allege that the omissions from the FDD stated above were deceptive and unfair tactics in violation of FDUPTA. (*See* DE 52 at ¶ 61). With regard to causation, Plaintiffs allege that Beaver would not have decided to purchase the Inkmart franchise had Beaver known of Paras' failed business venture in TechHero. (*See id.* at ¶ 55). Finally, Plaintiffs sufficiently allege damages, as they claim that Beaver purchased the Inkmart franchise for $200,000, and New England was forced to shut down its regional office and lay off its sales force. (*See* DE 52 at ¶ 37). Further, Plaintiffs allege that Inkmart's failure to disclose certain items in the FDD was a violation of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 41, *et seq.*, thus resulting in a *per se* violation of FDUPTA. (*See* DE 52 at ¶¶ 43-63). As such, Plaintiffs have fulfilled their pleading requirements in bringing a cause of action under FDUPTA.

### A. Plaintiffs' Tort Claims

In order to state a claim of fraud, "a plaintiff must show (1) a false statement or an omission of material fact, (2) knowledge of the statement's falsity, (3) intent to induce reliance, and (4) injury resulting

---

[4]According to the Amended Complaint, Beaver received an "Area Developer Guide," which set forth an Area Developer's role and key responsibilities: "1) To recruit InkMart.com Sales Representatives, who are out Business Owners; 2) To assist Sales Reps. In [sic] successfully launching their Inkmart.com business; and 3) To provide ongoing monitoring and coaching of these Sales Reps to help maximize their performance." (DE 52 at ¶ 27).

from the plaintiff's relying on the statement." *Drilling Consultants, Inc. v. First Montauk Sec. Corp.*, 806 F. Supp. 2d 1228, 1236 (M.D. Fla. 2011) (citing *Ward v. Atl. Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001). "Without justifiable reliance, there can be no actionable fraud." *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1057 (Fla. 4th DCA 1999). Further, a claim for negligent misrepresentation requires the plaintiff to allege that:

> (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely ... on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.

*Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 653 (Fla. 3d DCA 2006) (citing *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004). Common to both causes of action, and applicable to the case at hand, is the requirement that the plaintiff reasonably rely on the statements in question. *See Foreline Sec. Corp. v. Scott*, 871 So. 2d 906, 910 (Fla. 4th DCA 2004) (noting that actions for both fraudulent and negligent misrepresentations require reliance).

In Florida, the law is clear that "reliance on fraudulent representations is unreasonable as a matter of law where the alleged misrepresentations contradict the express terms of the ensuing written agreement." *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1231, 1238-39 (S.D. Fla. 2011) (citing *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1342 (S.D. Fla. 1999)) (applying Florida law). In the instant case, neither party disputes the existence and legitimacy of the Franchise Agreement. Within the Franchise Agreement was a disclaimer provision, which provides in relevant part, "Franchisee acknowledges and Franchisor expressly disclaims any understandings, agreements, inducements, course(s) of dealing, representations (financial or otherwise), promises, options, rights of first refusal, guarantees, warranties (express or implied) or otherwise (whether oral or written) which are not fully expressed in this Agreement." (DE 1-2 at § 21.2). Even more specifically, Beaver acknowledged that he had not been promised, nor will he receive, any level of advertising, marketing assistance, site location, development, or

services other than those represented in the Franchise Agreement. (*See* DE 1-2 at § 21.3). He also represented that he had the opportunity to have an independent advisor review the transaction and all related documents. (*See* DE 1-2 at § 21.5). The Franchise Agreement goes on to require Beaver to make a written statement regarding any prior matters or representations inconsistent with the terms of the Franchise Agreement as set forth, so as to clear up any misunderstandings; however, in the space provided to do so, Beaver fails to provide any of the promises alleged in the Amended Complaint. (*See* DE 1-2 at § 21.6; p. 40).[5]

However, Plaintiffs also claim fraudulent and negligent omissions or concealment. Specifically, Plaintiffs allege that Inkmart willfully failed to include in the FDD Paras' past involvement with the TechHero franchise system. (*See* DE 52 at ¶ 65). This accusation is different from the accusations based on representations of the franchise's performance or services available in that, as discussed above, those representations were specifically disclaimed and contrary to the provisions in the Franchise Agreement. Inkmart had a duty to disclose that which was required in the FDD by FDUPTA and the rules promulgated under the FTA Act, and Plaintiffs have sufficiently alleged that Inkmart failed to do so. Plaintiffs also purport that Inkmart should have disclosed certain territory option rights, details of the master franchise and area developer rights in the FDD, and listed MFI as a broker, but did not. (*See* DE 52 at ¶ 56).

Applying the legal standards set forth above, I find that Plaintiff could not have reasonably relied on the alleged fraudulent and negligent misrepresentations alleged in the Amended Complaint that were

---

[5]In the Franchise Agreement, page 40 provides the franchisee an opportunity to set forth any statements or promises that were made to the franchisee by the broker or the franchisor regarding all matters concerning the Franchise Agreement. (*See* DE 1-2 at 40). Mr. Beaver indicated that no such statements or promises had been made to him. (*See id.*).

contrary to the specific wording of the Franchise Agreement.[6]  However, Plaintiffs have sufficiently stated a claim for Inkmart's failure to disclose certain items in the FDD.[7]

### C. Plaintiffs' Common Law Rescission Claim

The Amended Complaint next pleads for common law rescission of the Franchise Agreement in Count IV.  Rescission is an equitable remedy, whose object is "to undo the original transaction and restore the former status of the parties." *Billian v. Mobil Corp.*, 710 So. 2d 984, 991 (Fla. 4th DCA 1998) (quoting *Willis v. Fowler*, 136 So. 358, 367-69 (1931)).  This relief is not given as a matter of right; but rather this Court has discretion to allow rescission based on the particulars of a case in the interest of justice. *See id.* at 990.  In order to state a claim for rescission, Plaintiffs must plead facts demonstrating the following: (1) the parties' relationship or character; (2) the making of a contract; (3) fraud, mistake, false representations, impossibility of performance, or other grounds for rescission; (4) that the party seeking rescission actually rescinded the contract and notified the other party accordingly; (5) if the moving party received benefits from the contract, Plaintiffs must allege that they attempted to restore those benefits to the party furnishing them; and (6) there is no adequate remedy at law for the moving party. *Billian*, 710 So. 2d at 991 (Fla. 4th DCA 1998) (citing *Crown Ice Machine Leasing Co. v. Sam Senter Farms, Inc.*, 174 So. 2d 614, 617 (Fla. 2d DCA 1965)).

First, applying the aforementioned standard, Plaintiffs have adequately plead elements one and two by alleging their relationship to Inkmart and MFI and the existence of a contract (the Franchise Agreement).

---

[6]Plaintiff's factual claims relating to the fraudulent inducement of the Franchise Agreement would also be barred under the Economic Loss Rule ("ELR"), as Plaintiffs seek to recover for purely economic damages based on Inkmart's oral representations to Beaver which concern the heart of the Franchise Agreement.  Notwithstanding the fact that these representations were of the type specifically disclaimed in the Franchise Agreement, this type of fraud claim is not independent of the contract, and the ELR wold bar recovery. *See Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 77-78 (Fla. 3d DCA 1997).  As the omissions from the FDD did not relate to the essence and performance of the contract, the ELR does not bar Plaintiffs' claims with respect to the FDD omissions.

[7]For clarification purposes, Plaintiffs have not adequately plead a basis recovery based on fraudulent and negligent misrepresentation for any of the promises, predictions, or representations made by Inkmart or MFI prior to the Franchise Agreement.  On the contrary, only Plaintiffs' claims for the omissions in the FDD survive the Motion to Dismiss.

The actual Franchise Agreement, referenced in the Amended Complaint, is central to the Plaintiffs' claims, and is attached to the original Complaint. (*See* DE 1-2). Further, the Franchise Agreement is signed by Beaver and Paras on behalf of Inkmart. (*See* DE 1-2 at 36).

Second, Plaintiffs have adequately plead the existence of false representations based on their allegations that the agents of Inkmart and MFI made false promises regarding the franchise and services that would be available to Beaver and that were ultimately left out of the contract. Further, Plaintiffs alleged several omissions from the FDD that also directly impacted the formation of the contract. Thus, Plaintiffs have alleged enough facts in the Amended Complaint to support its claim for rescission.[8]

Third, the Amended Complaint sufficiently alleges that Beaver notified Inkmart of his rescission of the Franchise Agreement, satisfying the fourth element of the claim. (*See* DE 52 at ¶ 39). Fourth, since the Plaintiffs do not allege that they received any benefit from the Franchise Agreement, for purposes of this stage in the proceedings, the fifth element is satisfied.[9]

Finally, with regard to the adequacy of the remedy at law, "a court is rarely able to determine the adequacy of a remedy at law at the pleading stage of a case before the facts are developed." *Billian*, 710 So. 2d at 991. Moreover, "[a] ruling on the adequacy of the legal remedy is generally left until the end of a case, often after a jury renders a verdict on the entitlement to it." *Id.* Thus, I think it would be premature to dismiss the Amended Complaint on such a basis. *See Belaire at Boca, LLC v. Associations Ins. Agency, Inc.*, No. 06-80887-CIV, 2007 WL 1812218, at *4 (S.D. Fla. June 22, 2007) (declining to dismiss the claim for rescission until the facts were further developed). In conclusion, Plaintiffs have adequately stated a claim for rescission of the Franchise Agreement, and Count IV survives the instant Motion.

---

[8] I note that the claim for rescission differs from Plaintiffs' tort claims in that a cause of action for rescission does not require reasonable reliance on the misrepresentations.

[9] Count IV is a cause of action for equitable relief, not based upon tort theory. As such, the economic loss rule does not apply to Count IV.

### D. Plaintiffs' Florida Franchise Act Claim

Plaintiff further attempts to state a cause of action under the FFA, alleging that Inkmart "intentionally misrepresented to Beaver the prospects or chances of success of the proposed Inkmart master franchise relationship," thus violating Florida Statutes section 817.416(2)(a)(1).[10]  In order to state a claim under section 817.416(2)(a)(1), Plaintiff must allege that it detrimentally relied upon Inkmart's misrepresentations regarding the prospects or success of the enterprise. *See Travelodge Intern., Inc. v. Eastern Inns, Inc.*, 382 So. 2d 789, 791 (Fla. 1st DCA 1980) ("We hold that recovery under [section 817.416(2)(a)(1)] may be had upon proof of intentional words or conduct by the franchisor, concerning the prospects or chances of success of the enterprise, which were relied upon by the franchisee to his detriment, and which are not in accordance with the facts.").

As a matter of law, I find that Plaintiffs cannot satisfy the detrimental reliance requirement, as the Franchise Agreement contained a detailed disclaimer and explanation regarding the risk associated with any business enterprise, and even required Plaintiff to set forth in writing any representations that previously had been made regarding the prospects or chances of success of the Inkmart franchise. *See Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (holding that as a matter of law, plaintiff could not establish the requisite detrimental reliance because "Cold Stone's franchise agreement included a detailed disclaimer and explanation regarding the risks of owning and operating a franchise and encouraged franchisees to conduct an independent investigation of their prospects for success"); *Hall v. Burger King Corp.*, 912 F. Supp. 1509, 1529 (S.D. Fla. 1995) (ruling that plaintiffs could not have justifiably relied on the alleged misrepresentations because of an unambiguous provision disclaiming all prior representations regarding the profits and/or sale volume that the franchisee might be expected to realize);

---

[10]Section 817.416(2)(a)(1) provides: "It is unlawful, when selling or establishing a franchise or distributorship, for any person[] [i]ntentionally to misrepresent the prospects or chances for success of a proposed or existing franchise or distributorship."

(*see also* DE 1-2 at §§ 21.3-21.6).   Thus, Count V of Plaintiffs' Amended Complaint must be dismissed with prejudice, as Plaintiffs' reliance on the alleged misrepresentations was unreasonable as a matter of law.

Inkmart further contends in its Motion that all of Plaintiffs' claims are preempted by the one-year limitations clause in the Franchise Agreement. (*See* DE 54 at 18). This argument is without merit, as Florida Statutes section 95.03 states: "Any provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations is void." Fla. Stat. § 95.03.   While counsel for Defendants makes a persuasive argument for a narrow construction of the statute, which would validate such limitations clauses for claims "related to" the contract, as in the Franchise Agreement, Plaintiffs' claims indeed arise out of the Franchise Agreement. Thus, section 20.10 of the Franchise Agreement is void and unenforceable in this Court.

## III. CONCLUSION

In conclusion, Plaintiffs have sufficiently stated a cause of action for Count I.  With regard to Count II and III, only Plaintiffs' claims concerning the omissions from the FDD survive the instant Motion, whereas those remaining in Counts II and III are dismissed with prejudice.  Plaintiffs also have sufficiently plead for rescission of the Franchise Agreement under Count IV.  Finally, Plaintiffs' FFA claim in Count V must be dismissed with prejudice.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Amended Complaint (DE 52) is **GRANTED IN PART** and **DENIED IN PART**.

It is further

**ORDERED AND ADJUDGED** that:

1.     With regard to Count I of the Amended Complaint, Inkmart's Motion is **DENIED**, Count I survives;

2.     With regard to Counts II and III, to the extent that Plaintiffs' claims are based on any of the alleged promises, predictions, or representations made by Inkmart or MFI prior to the

12

Franchise Agreement, Inkmart's Motion is **GRANTED IN PART**, and those claims are **DISMISSED WITH PREJUDICE**.

3.  With regard to Counts II and III, to the extent that Plaintiffs' claims are based on Inkmart's omissions from the FDD, Inkmart's Motion is **DENIED IN PART**, and such claims survive;

4.  With regard to Count IV, Inkmart's Motion is **DENIED**, Count IV survives;

5.  With regard to Count V, Inkmart's Motion is **GRANTED**, and the claims set forth in Count V are **DISMISSED WITH PREJUDICE**.


DONE AND ORDERED in Chambers at West Palm Beach, Florida, this ___4th___ day of September, 2012.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE


Copies to:     Counsel of Record

13