UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 12-60028-MIDDLEBROOKS/BRANNON**

ROBERT E. BEAVER, JR., *et al.*,
    Plaintiffs,
v.

INKMART, LLC., *et al.*,
    Defendants.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

THIS CAUSE comes before the Court upon Defendant Inkmart, LLC's ("Inkmart") Motion to Dismiss Pursuant to Rule 12(b)(1) ("Motion") (DE 83), filed August 13, 2012. Plaintiffs Robert E. Beaver ("Beaver") and Inkmart of New England, LLC ("New England") filed their Response (DE 98) on August 30, 2012, Inkmart filed its Reply (DE 109) on August 13, 2012, and Inkmart also filed a Supplemental Memorandum of Law (DE 114) as requested by the Court at the September 5, 2012 Calendar Call.[1] I have considered the instant Motion, the Response, the Reply, and Inkmart's Supplemental Memorandum of Law, and am otherwise fully advised in the premises.

**I.    BACKGROUND[2]**

The legnthy factual background can be found in my Order (DE 103) filed September 4, 2012. The facts relevant to this Motion are set forth here. I first note that within Plaintiffs' initial Complaint was a claim under the Connecticut Unfair Trade Practices Act ("CUTPA"), *Conn. Gen.*

---

[1] Plaintiffs chose not to accept the Court's invitation to submit supplemental briefing regarding issues the Court took with Inkmart's Motion. These issues are further discussed below.

[2] On February 14, 2012, Plaintiffs filed a Motion for Clerk's Default (DE 14) against Master Franchise Investments, Inc. ("MFI"). The Clerk has entered a Clerk's Default against MFI. MFI is still listed as a co-defendant, but as of this day has not appeared or otherwise defended this action.

1

*Stat.*, § 42-110, *et seq.*, which I dismissed with prejudice, finding it was precluded by the choice-of-law provision in the Franchise Agreement. (*See* DE 46).

Plaintiffs filed their Amended Complaint (DE 52) against Inkmart and MFI on June 25, 2012. Inkmart filed the first of two Motions to Dismiss the Amended Complaint (DE 54) on July 10, 2012, which I granted in part and denied in part on September 4, 2012. (*See* DE 103). Specifically, I dismissed Plaintiffs' negligent and fraudulent misrepresentation claims to the extent they were based on any of the alleged promises, predictions, or representations made by Inkmart or MFI prior to the Franchise Agreement. (*See* DE 103 at 12-13). I also dismissed Plaintiffs' Florida Franchise Act ("FFA") claim for failing to state a claim upon which relief may be granted. (*See id.* at 13).[3]

The second Motion to Dismiss is currently before the Court. In the Motion, Inkmart seeks dismissal of Plaintiffs' Florida Franchise Act ("FFA") and Florida Unfair Trade Practices Act ("FDUTPA") claims for lack of subject matter jurisdiction. Specifically, Inkmart argues that Plaintiffs lack standing to sue under either Act. (*See* DE 83 at 1-2).[4] On August 30, 2012, Plaintiffs filed a Response (DE 98) to the instant Motion, to which Inkmart filed a Reply (DE 109) on September 5, 2012.

Noting that when considering Inkmart's assertion – as to Plaintiffs' lack of standing under FDUTPA – in its current Motion with its assertions – that Plaintiffs had no standing under the choice-of-law provision to bring a claim under CUTPA – in its Motion to Dismiss the original Complaint, it appeared to leave Plaintiffs with no avenue of relief under any state's consumer

---

[3]Inkmart had also filed a Motion for Summary Judgment (DE 56) on July 17, which I denied on September 4, 2012. (*See* DE 105).

[4]Because I already dismissed Plaintiffs' FFA claim, (*see* DE 103 at 13), Inkmart's arguments with regard to FFA standing are moot, and I will only address the FDUTPA issue.

2

protection laws. This result seemed counterintuitive due to the individual states' strong interest in consumer protection. Accordingly, at the September 5, 2012, Calendar Call, I invited the Parties to submit supplemental briefing regarding the viability of Plaintiffs' FDUTPA or CUTPA claims, an issue the Court had with respect to Inkmart's argument that Plaintiffs lack standing under FDUTPA. Inkmart filed its Supplemental Memorandum of Law (DE 114) on September 7, 2012. The Plaintiffs did not file any supplemental briefing.

## II. LEGAL STANDARD

Federal courts have limited subject matter jurisdiction – leaving district courts the power to decide only certain types of cases. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1260-61 (11th Cir. 2000). District courts are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Further, the burden for establishing subject matter jurisdiction rests with the party bringing the claim. *See Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005).

Attacks on subject matter jurisdiction are seen in two forms: (1) facial attacks; and (2) factual attacks. *See Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1997) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "Facial attacks on a complaint 'require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion.'" *Id.* (alteration in original). On the other hand, factual attacks dispute "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and

affidavits, are considered." *Id.* The Eleventh Circuit has explained that "in a factual attack the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not attach, and the court is free to weigh the evidence." *Id.* The Court in *Lawrence v. Dubar*, 919 F.2d at 1529, notes that

> when the attack is factual, the trial court may proceed as it never could under 12(b)(6) or Federal Rule of Civil Procedure 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* (citing *Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981)). Contrary to Plaintiffs' argument, the attack on subject matter jurisdiction in this case is factual, as Inkmart presented factual evidence from outside the Complaint to the Court. *See MGC Comm., Inc. v. BellSouth Telecomm., Inc.*, 146 F. Supp. 1344, 1349 (S.D. Fla. 2001) (Gold, J.) (interpreting the 12(b)(1) motion as a facial attack, as the defendant "ha[d] not attempted to present any factual evidence from outside the Complaint to the Court"). With the standards set forth above, I turn to whether Plaintiffs have standing to sue in this Court under FDUTPA.

**III. DISCUSSION**

In the instant Motion, Inkmart argues that Plaintiffs lack standing to sue under FDUTPA because none of the alleged misconduct occurred within the territorial boundaries of Florida. (*See* DE 83 at 3-4). As set forth by Inkmart, "the allegedly deceptive conduct occurred telephonically or via e-mail between Mr. Beaver in Connecticut and various defendants, none of whom were located in Florida, and during an in-person meeting in Georgia." (*See* DE 83 at 3). Plaintiffs do not dispute

4

this in their Response; rather, Plaintiffs argue that Inkmart is a Florida Limited Liability Company and has its principal place of business in Florida, which they claim is sufficient to establish standing under FDUTPA. (*See* DE 98 at 9-11).

At the September 5, 2012, Calendar Call, counsel for Plaintiffs argued that the Court should interpret the Florida choice of law provision in the Franchise Agreement so as to provide protection under FDUTPA to an out-of-state consumer for conduct occurring entirely outside of Florida. Doing so, in this Court's opinion, would violate strong Florida public policy. *See Five for Entm't S.A. v. Rodriguez*, No. 11-24142-CIV, 2012 WL 2918574, at *8 (S.D. Fla. July 9, 2012) (Seitz, J.) (citing *Carnival Corp. v. Rolls-Royce PLC*, No. 08-23318-CIV, 2009 WL 3861450, at *6 (S.D. Fla. 2009) ("FDUTPA applies only to actions that occurred within the state of Florida."); *In re NationsRent Rental Fee Litigation*, No. 06-60924-CIV, 2009 WL 636188, at *5 (S.D. Fla. Feb. 24, 2009) (Brown, M.J.) (finding that interpreting a choice-of-law provision to provide protection under FDUTPA to out-of-state consumers based on conduct that occurred outside of Florida would counteract Florida's public policy); *Millenium Comm. & Fulfillment, Inc. v. Office of the Attorney Gen. Dep't of Legal Affairs, State of Fla.*, 761 So. 2d 1256, 1262 (Fla. 3d DCA 2000) (stating that FDUTPA "seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of [Florida] without limitation"). Because none of the alleged misconduct occurred within Florida, Plaintiffs do not have standing to bring a claim under FDUTPA; thus, Count I of the Amended Complaint must be dismissed. (*See* DE 52 at 9-13).

While researching the FDUTPA standing issue, I noted that other courts presented with an out-of-state deceptive and unfair trade practices claim with similar choice of law provisions had engaged in a Florida "choice of law analysis" and had dismissed such claims without prejudice so

5

as to allow the plaintiff to assert such claim in their home state. *See, e.g.*, *Burger King Corp. v. Weaver*, 798 F. Supp. 684, 687, 690 (S.D. Fla. 1992); *Scheck v. Burger King Corp.*, 756 F. Supp. 543, 545-46 (S.D. Fla. 1991).

The Parties, in their briefs relating to the Motion to Dismiss the initial complaint, did not brief the issue of what impact applying Florida law to Plaintiffs' CUTPA claim would actually have and so, no conflict of law analysis was conducted. Accordingly, I find it appropriate to briefly *sua sponte* revisit my Order dismissing Plaintiffs' CUTPA claim with prejudice.

In the Franchise Agreement between the parties, section § 20.5.1 provides a broad choice of law provision: "With respect to all claims, controversies, disputes or actions related to this Agreement or the relationship created thereby, this Agreement and any such related claims, controversies, disputes or actions shall be governed, enforced and interpreted under Florida law." (DE 1-2 at § 20.5.1). Absent a showing of fraud or unequal bargaining power, this Court will honor the Parties' intent to be governed under the laws of Florida. *See Dickinson v. Exec. Bus. Grp., Inc.*, 983 F. Supp. 1395, 1397 (M.D. Fla. 1997) ("The contract will be governed in accordance with the intent of the parties absent any evidence of fraud or unequal bargaining power that would undermine the validity of the choice of law provision."); *Weaver*, 798 F. Supp. at 687 (holding that since "neither party has offered any evidence of fraud or unequal bargaining power which would undermine the validity of the choice of law provisions . . . the parties' choice of Florida law will be respected"); *Scheck*, 756 F. Supp. at 546 ("Absent any evidence of fraud or unequal bargaining power, which this court fails to find, the parties' intention to be governed by Florida law should be honored."). Since no showing of fraud or unequal bargaining power has been made by Plaintiffs, Florida law controls.

In applying Florida's choice of law rules, the appropriate analysis to apply to a deceptive trade practice statutory claim is the "significant relationships test" of § 145 of the Restatement (Second) of Conflicts of Laws. *See In re NationsRent Rental Fee Litigation*, 2009 WL 636188, at *5 (citing *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 225 (S.D. Fla. 2002); *Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115-16 (11th Cir. 1996)); *see also Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1301 (11th Cir. 2003) (citing *Garcia v. Pub. Health Trust of Dade Cnty.*, 841 F.2d 1062, 1064-65 (11th Cir. 1988) (explaining that Florida follows the approach set forth in the Restatement, which states that "[t]he rights and liability of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties" and that contacts to be taken into account include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered") (quoting Restatement (Second) Conflict of Laws § 145 (1971))). In the instant case, Plaintiff Beaver is a resident of Connecticut and Plaintiff New England is a Connecticut Limited Liability Company with its principal place of business in Connecticut. (*See* DE 52 at 1). Aside from a business meeting with Inkmart executives in Georgia, Plaintiffs' franchises were being operated only in Connecticut. (*See* DE 52 at ¶ 6; DE 59-1 at 224-25).

Given the Plaintiffs' strong connection with Connecticut, I find that although this Court will respect the choice of law provision in the Parties' Franchise Agreement, such a provision should not foreclose a claim in Connecticut under Connecticut's own unfair and deceptive trade practices act.

However, as a Connecticut court is better fit to address whether to uphold the choice of law provision in light of Connecticut's strong public policy, I decline to address this issue at this late stage in the proceedings. Thus, Plaintiffs' CUTPA claim was rightfully dismissed, although it should have been dismissed without prejudice. *See, e.g.*, *Weaver*, 798 F. Supp. at 690 (S.D. Fla. 1992) (dismissing the plaintiff's Montana Unfair Trade Practices Act because it was "inapplicable to a lawsuit construed in accordance with the laws of the State of Florida").[5]

### III. CONCLUSION

In conclusion, I find that Plaintiffs do not have standing to assert a claim under FDUTPA.[6] Further, as discussed above, Plaintiffs should not be precluded from bringing a claim under CUTPA in their home state of Connecticut. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Inkmart's Motion to Dismiss Pursuant to Rule 12(b)(1) (DE 83) is **GRANTED IN PART** and **DENIED IN PART**.

It is further

**ORDERED AND ADJUDGED** that:

1. With regard to the FFA claim, Inkmart's Motion is **DENIED AS MOOT**;

2. With regard to the FDUTPA claim, Inkmart's Motion is **GRANTED**, and Count 1 of the Amended Complaint (DE 52) is **DISMISSED WITH PREJUDICE**;

---

[5] The Eleventh Circuit considered this case on appeal but did not address whether the parties' contractual choice of Florida law acted to bar the plaintiff's foreign unfair trade practices claim. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999).

[6] I note that even if I were to view the instant Motion as a "facial" attack on this Court's subject matter jurisdiction, the result would be the same, as Plaintiffs have presented no facts to support a finding that any alleged misconduct occurred within the boundaries of Florida.

3. The Court's previous Order (DE 46) dismissing Count 7 of Plaintiffs' initial Complaint (DE 1) alleging a cause of action under CUTPA is hereby **AMENDED** to reflect a **DISMISSAL WITHOUT PREJUDICE**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 12th day of September, 2012.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record